## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel. ) | |
| LEONARD LOGAN, ) | |
| ) | Case No. 12 CV 6170 |
| Petitioner, ) | |
| ) | Judge Kennelly |
| vs. ) | |
| ) | |
| NEDRA CHANDLER, Warden, ) | |
| ) | |
| Respondent. ) | |

### REPLY IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS

NOW COMES Petitioner, Leonard Logan, by and through his attorneys, THE EXONERATION PROJECT at the University of Chicago Law School, and hereby Replies in Support of his Petition for Writ of Habeas Corpus as follows:

### Introduction

The State's Answer to Leonard Logan's habeas petition provides no basis for this Court to deny Mr. Logan relief. Leonard Logan was convicted of murder because his trial counsel was unable to combat the testimony of LaTonya Payton acknowledging that one version out of many she gave to police of this crime was a version in which Mr. Logan was responsible. Trial counsel had numerous avenues for addressing this testimony, including to (1) allow Mr. Logan to testify in his own defense to counteract it; (2) allow alibi witnesses to explain to the jury that this testimony was not true because Mr. Logan was not in Illinois at the time this crime occurred; (3) present evidence that other scene witnesses had described the assailant in a way that did not match Mr. Logan;

and (4) argue for an effective limiting instruction that would make clear to the jury how they should think about Ms. Payton's testimony. Counsel did none of those things. Instead, Mr. Logan was convicted of a crime he did not commit using evidence that was constitutionally insufficient to convict him. In the process, his constitutional rights were violated.

The State's Answer addresses Mr. Logan's various claims (and even claims he does not raise) and in responding to each, repeats again and again in different ways that Mr. Logan's claims fail not only on the merits but because the state court already rejected them, or because Mr. Logan somehow defaulted these claims when the state court ignored them. As Mr. Logan has already argued to this Court, and as he addresses further below, these claims have merit. That the state court ignored them or ruled against Mr. Logan only re-emphasizes the tragedy of this case, that an innocent man who had meritorious claims was ignored by the state courts and forced to bring his case to federal court to seek reasonable jurisprudence and a fair result. In this Reply Mr. Logan specifically addresses the various grounds raised by the State for this Court in opposition to his Petition, but as demonstrated below, these grounds fail. This Court should grant Mr. Logan a new trial to repair the violations of his constitutional rights.

## Argument

**I.    Mr. Logan's Ineffective Assistance of Trial Counsel Claims Are Meritorious**

The bulk of Mr. Logan's claims in this Petition concern the ineffectiveness of his trial counsel and, as set forth in his Petition, were unreasonable applications of the Supreme Court's familiar standard in *Strickland v. Washington*, 466 U.S. 668 (1984), requiring Mr. Logan to show that (1) his counsel's performance was deficient under an

objective reasonableness standard; and (2) that deficient performance prejudiced him. *Id.* at 687. Despite the arguments presented by the State in its Answer, the state courts' resolution of these claims was clearly unreasonable.

> A. **Trial Counsel was Ineffective For Not Allowing Mr. Logan to Testify in His Own Defense**

The State contends that Mr. Logan has waived this issue for failing to raise it in his Petition for Leave to Appeal on Direct Appeal, (Answer at 17) and that the issue was barred by *res judicata* during post-conviction proceedings, when Mr. Logan did raise it at all three stages of state court review. (*Id.* at 18.) The State's analysis is incorrect. After Mr. Logan's counsel on direct appeal failed to raise this issue in his petition for leave to appeal, Mr. Logan raised this issue in his post-conviction pleadings, and those claims simply fell by the wayside, without the trial court giving any indication why Mr. Logan not be allowed to address those issues before the court in post-conviction review. (Answer at Ex. E. at pp. 12-13, 47-50.) The appellate court, in denying the appeal of Mr. Logan's post-conviction petition, simply ruled that it was appropriate for the trial court to only allow certain issues to proceed to an evidentiary hearing, without giving any basis for dismissing Mr. Logan's claim about his right to testify. (Memo at Ex. C at p. 16.) On this record, Mr. Logan has exhausted his claim.

The State's comeback is that this claim is barred by *res judicata* because Mr. Logan could have raised it in his petition for leave to appeal on direct appeal but did not. The state courts never said this issue was barred by *res judicata*; they simply let the claim drop without explanation. Further, *res judicata* is not an independent state law ground preventing a federal court from hearing an issue in a habeas petition. *See Moore v. Bryant*, 295 F.3d 771, 776 n.1 (7th Cir. 2002).

The State further responds that in his motion for a new trial "the trial court found the State's evidence more credible than petitioner's and declined to find that petitioner was coerced not to testify." (Answer at 17.) In fact, this is untrue. The trial court heard some evidence about this issue at the motion for a new trial and ruled, on all of Mr. Logan's issues, that the State's "position is more persuasive and correct under the facts of this case and the law that guides the rulings in this case" and on that basis dismissed the motion for a new trial. (SR.II 762.) The trial court made no credibility findings or any analysis of the law. The State did not even argue the issue about Mr. Logan's right to testify or his credibility on that point. (SR.II 761.) No state court ever made a credibility decision in this regard or determined whether it was denying this claim on some legal basis or a factual basis. There is simply no record on this issue. Although Mr. Logan still needs to satisfy the requirements of 28 U.S.C. § 2254(d) in presenting his claim to this Court, there is no bar to this Court considering the issue. *See Harrington v. Richter*, 131 S. Ct. 770, 785-86 (2011).

Further, there could have been no credibility finding by the state courts on this issue that would bar this Court from considering the issue now. Mr. Logan contends that it was his counsel, Anthony Thomas, who told him that if he testified he would quit his case. Mr. Thomas gave some testimony at the post-trial motion but did not testify on this issue. (Tr. 693-708.) Mr. Kelly also testified, though not on this issue. (Tr. 727-41.) The Court heard Mr. Logan's limited testimony in this issue in which he testified that in a break on the case Mr. Thomas told him that if he testified, Mr. Thomas would quit. (Tr. 750-53.) The trial court never determined this testimony was incredible, it never assessed this testimony at all, it merely denied Mr. Logan's claims.

4

On the factual record below and considering this evidence, this is a meritorious claim and the state court's decision to summarily dismiss it at the motion for a new trial stage and never allow Mr. Logan the opportunity to raise the issue in post-conviction proceedings was an unreasonable application of clearly-established law. And the State does not argue otherwise in its Answer; its only contention is that this Court should not "reconsider" the issue. As Mr. Logan explained in his Memorandum of Law, the unrebutted testimony was that his counsel threatened to quit, effectively taking the decision to testify away from Mr. Logan. In such a close case, this denial of his rights prejudiced Mr. Logan because it prevented him from presenting crucial evidence that would have undercut the thin margin of evidence pointing toward his conviction, the impeached testimony of Latonya Payton. For these reasons and the reasons set forth in Mr. Logan's Memorandum in Support, this Court should grant him a new trial on this claim.

### B. Trial Counsel Was Ineffective For Failing to Present Alibi Evidence

Similarly, Mr. Logan's counsel's decision not to call alibi witnesses was ineffective, and the state courts' determination otherwise was unreasonable.[1] Again, the State contends that the state courts' determination that it was reasonable for trial counsel not to call these witnesses is itself reasonable, and contends that Mr. Logan is asking this court to re-assess witness credibility. (Answer at 18-19.) The issue that the lower court and the State here have ignored is trial counsel's *promise* to present alibi witnesses and counsel's failure to follow up on that promise. This renders the failure to call these

---

[1] Mr. Logan presented argument in his Memorandum of Law why there is no independent state law ground preventing this Court from considering this issue, a contention that the State does not appear to dispute in its Answer.

5

witnesses a different kind of decision. Neither the State nor the state courts addressed the constitutional issue at work here: that promising to do something and then failing to do it when nothing has changed can be devastating to a defendant's case.

This case is strikingly similar to *Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003) in which the Seventh Circuit upheld this Court's determination that counsel was ineffective for promising during opening statements but then failing to call the defendant to testify. *Id.* at 257 ("[W]hen the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable, for 'little is more damaging than to fail to produce important evidence that had been promised in an opening.'") (internal citation omitted). Similarly, here counsel learned nothing during trial he could not have known before, and yet after promising he would present an alibi, did not, and watched his client be crushed by that decision.

The appellate court below concluded that because trial counsel offered reasons for changing his mind, there was nothing ineffective about the decision. (Memo at Ex. C. at 15.) Even assuming that Mr. Kelly's testimony should be credited on those points, his explanation does not render his assistance effective. *See Wiggins v. Smith*, 539 U.S. 510, 527 (2003) (holding that an attorney's decision is not immune from examination simply because it is deemed tactical). And it does not require this Court to re-determine credibility, but simply to re-assess the merits of what Mr. Kelly was testifying to below.

Put another way, the trial court may have concluded that it believed Mr. Kelly was telling the truth when he testified as to what prompted his decisionmaking, but it can conclude Mr. Kelly was mistaken in his belief and therefore find him ineffective without upsetting the credibility-assessing function of the state court. And respectfully, this is the

6

rare case where this Court should find the state court was unreasonable in its fact-finding. Mr. Kelly claimed at the evidentiary hearing that his decision not to call the alibi witnesses was based on his concern that these witnesses would lead to other damaging evidence coming into court, and his law clerk telling him, and then the witnesses telling him, that the witnesses did not want to testify. (R. B. 125.) As set forth in Mr. Logan's Memorandum in Support, there are numerous reasons that the trial court was unreasonable in concluding these facts were true, but the bigger issue remains that all of this evidence was information that his counsel knew or should have known prior to trial. Counsel knew that calling witnesses might shift his burden, counsel had no idea what evidence the State would present that might obviate the need for an alibi, and counsel had the opportunity to fully talk to the witnesses and determine whether they were willing to come to court and what negative information might come out of their testimony. All of counsel's considerations about the burden of proof, about negative information that might come out if these witnesses testified, was information counsel knew and could weigh prior to trial, and yet counsel still made the promise to the jury that they would hear an alibi that Mr. Logan was in Milwaukee. There was nothing unforeseeable about what counsel claimed transpired during trial, and the error was not in not calling the alibi witnesses, but in not calling them after making an explicit promise to do so. The lower courts were unreasonable in failing to address this aspect of the ineffective assistance of counsel claim, and this Court should correct that error now.

    **C.    Trial Counsel Was Ineffective For Failing to Present Evidence About a 911 Call That Exonerated Mr. Logan**

Mr. Logan believes that trial counsel could have presented evidence that there was a 911 call that contained information showing that witnesses to the shooting in this

7

case gave a description of the shooter that does not match Mr. Logan. As Mr. Logan has been transparent about all along, he and his current counsel do not possess a copy of this 911 tape, and have consistently sought a copy from the courts only to be rejected. The State contends in its Answer that Mr. Logan has defaulted this claim by not making a record of what the tape would show, and contends that these proceedings are not a discovery avenue for Mr. Logan. (Answer at 21.)

The State's contention that an independent state law ground bars re-litigation of this issue fails as an initial matter (Answer at 21.) First, the Illinois State Post-Conviction Statute directs someone in Mr. Logan's position to attach evidence to support his claims "or shall state why the same are not attached." 725 ILCS 5/122-2. Here, Mr. Logan consistently presented to the state courts that he could not present the 911 tapes themselves because he did not possess them, and he futilely requested the opportunity to obtain them in discovery. And as with his other claims, this claim fell by the wayside and was rejected without comment by the Illinois courts. (Memo at Ex. C at p. 16.) In this way, there was no independent state law ground preventing the state courts from considering this claim because he complied with the state procedural rules. *See Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999) (an independent state law ground must be "firmly established and regularly followed state practice at the time it is applied").

As Mr. Logan argued in his initial Petition, this is clearly an issue where Mr. Logan needs discovery to prove his claims and to show why the Illinois courts' summary rejection of these claims was an unreasonable application of clearly established federal law under Section 2254(d). Mr. Logan has demonstrated why, if the tapes show what he believes they show, his right to counsel was violated, but he admittedly needs the tapes to

8

make this showing to this Court. For this reason, although discovery is not usually granted in habeas proceedings, this Court should grant him limited discovery to subpoena these tapes and present evidence of the same at an evidentiary hearing. Because on these facts Mr. Logan has shown that his rights were violated, and because good cause exists for this discovery, this Court should grant limited discovery on this issue. *See Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (district courts should grant discovery in habeas proceedings where a litigation (1) makes a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) shows "good cause" for the discovery).

### D. Trial Counsel Was Ineffective For Failing to Seek an Effective Limiting Instruction on the Polygraph Evidence

Mr. Logan's state court post-conviction proceedings were focused on an issue of state law about the admission of evidence that Latonya Payton took, and failed a polygraph exam. It is this issue that dominated most of his evidentiary hearing below, and most of his appellate pleadings to the First District Court of Appeals and the Illinois Supreme Court. And Mr. Logan lost on this issue; the state courts took a different view of the Illinois law on polygraph evidence than Mr. Logan does. Although Mr. Logan believes his interpretation is correct, he also acknowledges that most aspects of the polygraph-related claims he raised below are issues of state law, and he does not raise them to the Court here.[2] But there is one way in which the use of polygraph evidence did

---

[2] To the extent Mr. Logan's Petition raised claims that the use of polygraph evidence at his trial violated his right to due process under the United States Constitution, and that his trial counsel was ineffective for failing to object to the prosecution's closing arguments, Mr. Logan acknowledges that these claims cannot survive the review of this Court because of the absence of federal law on these issues and the state law-driven determinations made below. Similarly, the State contends that Mr. Logan raised an issue

9

violate his federal constitutional rights: his counsel should have sought a limiting instruction on the issue of the polygraph results. The State's answer argues that Mr. Logan is barred from raising that issue here because the decision was one of reasonable trial strategy. (Answer at 21-25.) This argument fails.

The State's Answer contends that the limiting instruction as given was sufficient and that giving a further limiting instruction at the time the evidence was mentioned would have "done more harm than good" and does not take this decision out of the realm of acceptable trial strategy. (Answer at 22.) As argued in Mr. Logan's Memo, however, that reasoning fails any reasonable interpretation of the *Strickland* standard. There was no way that failing to seek a limiting instruction somehow distracted the jury from Latonya Payton's failing a polygraph exam; this issue was discussed again and again, including at closing. Not only was it discussed with Payton, but the State raised this evidence with the police officers who questioned Payton, at which time the court finally gave a limiting instruction. (SR.II. 343-44, 357-58, 369.) And of course, these issues came up again in closing arguments. Mr. Logan is specifically arguing that the limiting instruction should have been given at the time the jury was hearing about this evidence - the jury needed to hear the instruction when it heard the damaging evidence. Counsel could not un-ring the bell once it was rung in the jurors' minds. There can be no

---

in his Petition about counsel being ineffective for failing to request a mistrial after certain evidence elicited in Charles Jenkins' testimony, and about counsel's failure to elicit testimony about the timing of Latonya Payton's recantation of her grand jury testimony. (Answer at 27, 28.) Although Mr. Logan's petition recounts these as issues he raised below, they are not separate claims in his Petition before this Court. Additionally, Mr. Logan does acknowledge that he did not fully exhaust his cumulative due process claim in the state courts, although because of the merits of his individual claims he does not have need of that claim before this Court. Finally, because he has not procedurally defaulted the claims relied on his Petition, he has no need of the actual innocence gateway to excuse any procedural default.

reasonable decision to fail to giving a limiting instruction on evidence that was obviously going to come up repeatedly in the trial. No reasonable trial attorney could have concluded that by failing to seek a limiting instruction, the jury would somehow not hear this evidence or forget about it, when it was destined to be brought up again and again. Similarly, as set forth in Mr. Logan's Memorandum in Support, there is prejudice in this decision, because failure to have a timely instruction when the jury was hearing the evidence in question rendered the instruction that was given completely meaningless.[3]

### E. Mr. Logan's Cumulative Ineffective Assistance Claim is Meritorious

The State's Answer concludes its review of Mr. Logan's ineffective assistance of counsel claims by arguing that Mr. Logan's cumulative ineffectiveness claim is meritless. (Answer at 29.) The State acknowledges, however, that this Court should think about *Strickland* by considering counsel's representation as a whole, and that is what Mr. Logan urges this Court to do in its consideration of Mr. Logan's claims. Trial counsel made a number of errors. The accumulation of those errors reinforce that they were not trial strategy, but rather the result of a counsel who cut too many corners in a close case and left Mr. Logan without the ammunition necessary to defend himself. The accumulation of these errors also reflects that the trial court below was not reasonably applying *Strickland*; rather than truly assessing counsel's performance, the state courts were looking for ways to simply dismiss Mr. Logan's claims and get his case off their dockets, and in doing so they gave trial counsel too much of the benefit of the doubt.

---

[3] Mr. Logan raised an ineffective assistance of appellate counsel claim for failing to raise the ineffectiveness of trial counsel in this regard. The State's Answer merely contends that because the underlying claim fails, the ineffective assistance of appellate counsel claim fails. (Answer at 31.) For the reasons set forth by Petitioner, this analysis is incorrect.

11

That is an unreasonable error this Court can and should correct in assessing the merits of this Petition.

## II. Mr. Logan's Due Process Claims Is Meritorious

As Mr. Logan argued on direct appeal, the evidence in this case was insufficient to convict him. The jury heard only that in a prior inconsistent--and recanted--statement given before trial, Latonya Payton implicated him in the crime. The jury also heard that Mr. Logan's prints were found in Payton's home and on a CD in the rental car used in the crime. That was all that convicted him, in a trial replete with other errors. This evidence was constitutionally insufficient to convict him, and he should receive a new trial on this basis.

The State's Answer contends that because one eyewitness is sufficient to convict, Mr. Logan cannot show that the evidence was insufficient to support his conviction. (Answer at 13.) Respectfully, this is not a case in which there is eyewitness testimony and 20 bishops testifying the eyewitness is a liar. (*Id.*, quoting *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (rejecting that affidavits from the defendant's family members would have changed the outcome at trial given the testimony of an eyewitness).) This is not a case, like in *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005), also cited in the State's Answer, where the best evidence the defendant could muster were six exculpatory affidavits to counteract six inculpatory witnesses.

Mr. Logan's case is the extraordinary exception; a case that actually meets the *Jackson* standard. This is a case where no one at trial said Mr. Logan did it. The State could find no person today who would testify that Mr. Logan did it. The only person who ever said Mr. Logan did it was Latonya Payton, after giving eight other stories to

12

police and after being interrogated for hours. She recanted this testimony, unequivocally on the witness stand, even after being charged with perjury. She is essentially calling herself a liar. And one of the men shot during the crime also says Mr. Logan is innocent. Mr. Logan's conviction on these facts should give anyone associated with the justice system significant pause - he will be serving over twenty years of his life in prison on these scant bits of inculpatory evidence. Nothing the jury or appellate court determined at the state court level does anything to dispel this conclusion by this Court, or prevents this Court from exercising its power to correct this fundamental error.

### III. Even If This Court Denies Mr. Logan Habeas Relief, It Should Grant Him A Certificate of Appealability

The State concludes its Answer by arguing that this Court should deny Mr. Logan relief and should further deny him a Certificate of Appealability under Habeas Corpus Rule 11(a). (Answer at 32-33.) This is truly putting the cart before the horse, since Mr. Logan has presented a meritorious petition, the contents of which this Court has not yet had a full opportunity to consider. In the unlikely event that this Court denies Mr. Logan relief, however, Mr. Logan seeks the opportunity to argue for the issuance of a Certificate should that become necessary.

### Conclusion

For all the reasons set forth in Mr. Logan's Petition, his Memorandum in Support of his Petition, and in this Reply, Mr. Logan respectfully requests that this Court grant him relief by overturning his conviction and granting him a new trial. To the extent it would be useful to the Court in reaching a decision, Mr. Logan also requests this Court grant him argument or an evidentiary hearing if necessary to fully present his claims, and

the opportunity to further brief any issues that would be useful for the Court's consideration.

Respectfully submitted,

/s/ Tara Thompson

Jon Loevy
Tara Thompson
THE EXONERATION PROJECT
at the University of Chicago Law School
6020 S. University Avenue
Chicago, IL 60637
(312) 243-5900

March 18, 2013

## CERTIFICATE OF SERVICE

    I, Tara Thompson, an attorney, certify that on March 18, 2013, I sent by electronic means a copy of the attached Reply in Support of Petition for Writ of Habeas Corpus to all counsel of record.

/s/Tara Thompson