## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD LOGAN (R-11048) | ) | |
| | ) | |
| Petitioner, | ) | Case No. 12-CV-6170 |
| | ) | |
| vs. | ) | Case Number of State Court Conviction |
| | ) | 97 CR 19288 |
| DONALD ENLOE, Warden,[1] | ) | |
| | ) | The Honorable Matthew Kennelly |
| Respondent. | ) | |

## AMENDED PETITION FOR
## WRIT OF HABEAS CORPUS

1.  Name and location of court where conviction was entered:   Circuit Court of Cook County, Criminal Division

2.  Date of judgment of conviction:    November 17, 2000

3.  Offense of which petitioner was convicted:    Murder with Intent to Kill/Injure

4.  Sentence imposed:    45 years imprisonment

5.  What was your plea?
    (A)    Not Guilty (X)
    (B)    Guilty (   )
    (C)    Nolo contendere (   )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:    N/A

## PART I – TRIAL AND DIRECT REVIEW

1.  Kind of Trial:    Jury (X)    Judge only (   )

2.  Did you testify at trial?    YES (   )    NO (X)

3.  Did you appeal from the conviction or sentence imposed?

---

[1] Since the initiation of these habeas proceedings, Mr. Enloe has become warden of Dixon Correctional Center.

YES (X)    NO (  )

(A)  If you appealed, give the:
      (1)    Name of the court:     Appellate Court of Illinois, First Judicial District

      (2)    Result:  Conviction affirmed

      (3)    Date of ruling:    August 20, 2004

      (4)    Issues raised:

      Issue #1:    Insufficiency of the evidence at trial

      Issue #2:    Impropriety of the State's reference to gangs and misstatements of the evidence

      Issue #3:    Ineffective assistance of counsel due to trial counsel's failure to call alibi witnesses.

(B)    If you did not appeal, explain briefly why not:    N/A

4.    Did you appeal, or seek leave to appeal, to the highest state court?    YES (X)    NO  ()

    (A)    If yes, give the

        (1)    Result:    Denied

        (2)    Date of ruling:    November 24, 2004

        (3)    Issues raised:

      Issue #1:    Insufficiency of the evidence at trial

      Issue #2:    Impropriety of the State's reference to gangs and misstatements of the evidence

      Issue #3:    Ineffective assistance of counsel due to trial counsel's failure to call alibi witnesses.

(B)    If no, why not:    N/A

5.    Did you petition the United States Supreme Court for a writ of *certiorari*?
    YES (  )    NO (X)

    If Yes give:    (A) date of petition: _____
                (B) date*certiorari* was denied: _____.    N/A

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?
    YES   (X)      NO (   )

With respect to *each* post-conviction petition give the following information:

First Post-Conviction Petition:
>    A.    Name of court:    Circuit Court of Cook County, Criminal Division
>
>    B.    Date of filing:    March 8, 2005
>
>    C.    Issues raised:
>
>>        Issue #1:    Ineffective assistance of appellate counsel for failing to raise meritorious issues
>>
>>        Issue #2:    Logan was not proven guilty beyond a reasonable doubt, and is a victim of cruel and unusual punishment in having to serve a sentence for a crime he did not commit
>>
>>        Issue #3:    Violation of his right to due process for admitting pretrial statements as substantive evidence
>>
>>        Issue #4:    Ineffective assistance of counsel where trial attorney failed to present exculpatory evidence from alibi witnesses
>>
>>        Issue #5:    Ineffective assistance of counsel where his trial counsel forced him to waive his right to testify
>>
>>        Issue #6:    Violation of his right to due process by the State's improper closing argument

Supplemental Post-Conviction Petition:
>    A.    Name of court:        Circuit Court of Cook County, Criminal Division
>
>    B.    Date of filing: March 16, 2006
>
>    C.    Issues raised:
>
>>        Issue #1:    Due process violation where evidence regarding a witness' polygraph examination was introduced without a limiting

3

instruction

Issue #2:    Ineffective assistance of counsel where trial counsel failed to ensure a limiting instruction for the jury

Issue #3:    Ineffective assistance of appellate counsel where counsel failed to raise arguments related to the improper admission of polygraph evidence

Issue #4:    Ineffective assistance of counsel where alibi witnesses were promised in opening argument and then never introduced at trial

Issue #5:    Ineffective assistance of counsel where trial counsel failed to present evidence of a contemporaneous 911 tape, describing a shooter other than Logan

Issue #6:    Ineffective assistance of counsel caused by cumulative errors, including the fact that trial counsel failed to rebut the false assertion by prosecutors that the main eyewitness only recanted her testimony after a visit with petitioner in jail

Second Supplemental Post-Conviction Petition:

A.    Name of Court:    Circuit Court of Cook County, Criminal Division

B.    Date of Filing:    File stamped February 22, 2007

C.    Issues raised:

Issue #1:    Ineffective assistance of counsel where trial counsel failed to ask for a mistrialwhere the state, without any good faith basis, asked a witness on cross-examination whether that witness was biased by the state's failure to provide him with assistance in his own criminal case

D.    Did you receive an evidentiary hearing on your petition?
YES    ( X ) (partial hearing on some issues)NO ( )

E.    What was the court's ruling?  The court declined to grant an evidentiary hearing on some issues.  On the issues that did make it to an evidentiary hearing, the Court denied post-conviction relief.

F.    Date of court's ruling:  November 19, 2009

G.    Did you appeal from the ruling on your petition?  YES (X)  NO ( )

H.    (a)    If yes,

4

         (1)      What was the result?  Affirmed denial of post-conviction relief

         (2)      Date of decision:     June 27, 2011

I.     Did you appeal, or seek leave to appeal this decision to the highest state court? YES (X)   NO ( )

    (a) If yes:

         (1)      What was the result?  Denial of petition for leave to appeal

         (2)      Date of decision:     November 30, 2011

    (b)    If no, explain briefly why not:

2.     With respect to this conviction or sentence, have you filed a petition in a **state court** using any form of post-conviction procedure, such as *coram nobis* or habeas corpus? YES ( )      NO (X)

    A.     If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.     Nature of proceeding

        2.     Date petition filed

        3.     Ruling on the petition

        4.     Date of ruling

        5.     If you appealed, what was the ruling on appeal?

        6.     Date of ruling on appeal

        7.     If there was a further appeal, what was the ruling?

        8.     Date of ruling on appeal

3.     With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?     YES ( )     NO (X)

    A.     If yes, give the name of court, case title and case number:   N/A

    B.     Did the court rule on your petition?  If so, state:

     (1)    Ruling:

     (2)    Date:

4.     With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES ( )    NO (X )

     If yes, explain:

## PART III – PETITIONER'S CLAIMS

1.     State briefly every ground on which you believe you are being held unlawfully. Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

**NOTE ON THE AMENDED PETITION:**  Logan recognizes that on November 21, 2013, this Court entered an order overruling all of Logan's then-pending claims other than his ineffective assistance of trial counsel claim, on which the Court set and held an evidentiary hearing.  (Dckt. No. 41.)  Logan re-asserts those claims in this Amended Petition only to make clear that he is not abandoning or voluntarily dismissing such claims.  He recognizes the effect of the Court's November 21, 2013 opinion was to resolve those claims for purposes of the proceedings now pending before this Court.  Logan also incorporates all of the evidence presented at the evidentiary hearing in this matter as well as the legal arguments presented in his previously-filed memorandum of law and his post-hearing briefings in support of his claims. He has pending before this Court a motion to stay his pending habeas while he pursues his unexhausted claims in state court.  In the event this Court denies his motion to stay, then Logan seeks the opportunity to present further factual and legal support for his amended claims.

### Introduction

     Leonard Logan stands convicted of murder on the thinnest of evidence - the fact that one of eight stories a witness gave to police implicated Leonard Logan in a drive-by shooting that left someone dead.  After testifying as much to the grand jury, that witness, Latonya Payton, recanted her statement prior to trial, and testified at trial that it was false.  She was impeached by prosecutors on the stand, and her prior statement that she had been in the car with Leonard Logan during the shooting was the critical evidence presented against Leonard Logan at trial.  This evidence was razor thin, so thin that on direct appeal one appellate judge concluded that the evidence was insufficient to convict Logan.

     Because the evidence was thin, prosecutors needed some help to convict Leonard Logan, and they received that help in the form of significant constitutional errors that contributed to

Logan's conviction. Those errors, discussed below, fall into two categories. First, in the face of a paucity of evidence, Logan's counsel was ineffective. His trial counsel allowed prosecutors to present evidence that Latonya Payton failed a polygraph exam, and failed to ensure that the jury received an appropriate limiting instruction about this evidence. Trial counsel failed to use a contemporaneous 911 tape to impeach another witness and described a shooter that did not match Logan's description. When the state implied that Ms. Payton had recanted only after talking to Logan in the county jail, Logan's counsel failed to present evidence that her recantation occurred before that visit. Counsel failed to present alibi evidence showing that at the time of the shooting Logan was out of town visiting family in Milwaukee, but he promised the jury in opening statements that they would hear such evidence. Logan also wanted to testify in his own defense and was forced by defense counsel to waive that right.Finally, counsel failed to ask for a mistrial when the state, without a good faith basis for asking the question, inquired of an eyewitness (and relative of the victim) who testified that Logan was not the shooter whether that witness was angry at the state that he had not received assistance on his own criminal case. Counsel's errors were cumulative as well as individual. When Logan's appellate counsel took over the case, he also failed to raise meritorious issues on appeal.

Second, this trial violated Logan's right to due process. There was insufficient evidence to convict Logan. The state only overcame this insufficient evidence because it introduced evidence about Ms. Payton's failing a polygraph exam, the introduction of which also violated Logan's right to due process.

Finally, Logan recently discovered new evidence in the form of evidence that Glenn Evans, an officer centrally involved in the investigation and prosecution of his case, had a previously unknown pattern of using excessive force, which gave him both a motive to frame Logan in this case, and made his testimony and the testimony of those with whom he collaborated unreliable. He also recently obtained new evidence in the form of an affidavit from a previously-unknown witness who has averred that someone else, not Logan, committed this crime. Thus, Logan has evidence of his actual innocence which should overcome any procedural default in this case. He seeks the opportunity to exhaust these claims before litigating them before this Court.

Logan raised these issues other than Evans' pattern of misconduct and actual innocence claims in the courts below during post-conviction proceedings. He did receive an evidentiary hearing on certain of these issues, including those issues related to the polygraph evidence and the failure to present alibi witnesses. The Illinois state courts found that the polygraph evidence was properly admitted, and that the alibi witnesses would not have assisted Logan. These conclusions contained unreasonable factual findings and unreasonably applied clearly established federal law. Logan deserves a new trial to correct these errors.

Logan lays out his specific grounds for relief below, but also requests the opportunity more fully brief the legal issues involved in order to more fully present his claims.

**(A)     Ground #1:  Leonard Logan was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel used threats to coerce Logan into foregoing his right to testify at trial.**

Supporting Facts:

Logan expressed his desire to testify at trial, but his trial counsel refused to let Logan exercise that right. During the trial, Logan's trial counsel threatened to quit the case if Logan insisted on taking the witness stand. Counsel asserts that the decision for Logan not to testify was both his choice and based on a legitimate trial strategy, but neither of these assertions is supported by the factual record.

Logan has exhausted this claim in the state courts of Illinois, but he has not received a hearing on the merits of this claim. Logan was granted an evidentiary hearing on other claims, but he was silenced on this issue when he tried to argue it at the evidentiary hearing, and no court has ever advanced any legal reason for Logan to be denied a hearing on this issue.

**(B)     Ground #2:    Logan was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel promised alibi witnesses in opening remarks and then failed to call them during the course of the trial.**

Supporting Facts:

Logan's trial counsel promised the jury an alibi defense in opening statements and then failed to call alibi witnesses, over Logan's objection. Alibi witnesses place Logan in Milwaukee during the time period that this crime took place, and two witnesses appeared in court to testify to those facts, but Logan's trial counsel did not call them. Nothing occurred between opening statements and the end of the trial that would merit such a reversal. In a post-trial motion and at an evidentiary hearing, Logan's trial counsel advanced different theories and alleged different facts justifying this decision, but again, his purported explanation is not supported by the record, and his explanation advances no justifiable legal strategy.

Logan's alibi witnesses signed affidavits to the veracity of their story and they appeared at an evidentiary hearing to attest to the facts. Both witnesses and a legal clerk refute the stories that Logan's trial counsel has given for his reasons in not calling the witnesses. Logan was denied relief on this claim at an evidentiary hearing below in which the court made unreasonable findings of fact and unreasonable applied clearly established federal law.

**(C)     Ground #3:    Logan was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to admit evidence of a contemporaneous 911 call with a description of the shooter that did not match Logan.**

Supporting Facts:

Logan's trial counsel was aware of a contemporaneous 911 phone call that described shooter other than Logan, but he failed to admit evidence of this phone call into the record, prejudicing Logan's defense. Logan tried to seek an evidentiary hearing on this issue in the Illinois courts, but was denied, without explanation, the opportunity to present this issue at an evidentiary hearing.

8

**(D)    Ground #4:   Logan was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to argue for an effective limiting instruction regarding evidence that the main eyewitness failed a polygraph exam, and failed to object to improper closing arguments.**

Supporting Facts:

     As described above, the state successfully introduced evidence that after Latonya Payton failed a polygraph exam, she told police that she had been in the car with Leonard Logan when he did the drive-by shooting in this case.   This was improper, as described below, and particularly damaging because Leonard Logan's counsel failed to seek a meaningful limiting instruction to the jury that they could only consider this evidence to evaluate whether that statement was given voluntarily, and for no other purpose.   Trial counsel also failed to object to closing arguments where the state continued to present argument that Latonya Payton had failed a polygraph exam. This failure compounded the introduction of the evidence in the first place and gave the jury license to speculate on the meaning of that evidence.   Logan was denied relief on this claim at an evidentiary hearing in which the court made unreasonable findings of fact and unreasonable applied clearly established federal law.

**(E)    Ground #5:   Logan was denied effective assistance of counsel under the Sixth and Fourteenth Amendments through cumulative errors made by trial counsel.**

Supporting Facts:

     The errors above, as well as his counsel's failure to elicit testimony that Latonya Payton recanted before she met with Logan in the Cook County Jail, and counsel's failure to ask for a mistrial when the state inquired of a witness on cross-examination, without any good-faith basis, whether that witness was angry that the state had not assisted him with his own criminal case, were cumulative errors.   Each of these errors, as laid out above, is sufficient for relief under the Constitution of the United States, and when read together, the sum prejudice of these errors is irrefutable evidence that Logan was denied a fair trial under the law due to the ineffective assistance of counsel.

**(F)    Ground #6:   Logan was denied his right to due process under the Fifth and Fourteenth Amendments where the court allowed the introduction of evidence that Latonya Payton had failed a polygraph exam.**

Supporting Facts:

     An eyewitness witnessed the shooting in this case and wrote down the plate number of the vehicle he had seen the shooter riding in.   That plate number tracked back to a car rented by Latonya Payton.   Police took Latonya Payton into custody.   She gave numerous statements to the police.   It wasn't until her eighth and final version of events that she finally implicated Leonard

9

Logan in the shooting.   And this eighth and final version came after she was taken for a polygraph exam.   When she recanted this version of events and testified at trial that Leonard Logan had not been involved, prosecutors introduced evidence that she only gave this eighth and final version of events after failing a polygraph exam.   The introduction of the evidence that she failed violates Leonard Logan's right to due process, as does the state's closing argument where it repeatedly argued the polygraph showed that Ms. Payton was a liar.   Such evidence is prejudicial and has no bearing on his guilt and innocence.   Logan was denied relief on this claim at an evidentiary hearing in which the court made unreasonable findings of fact and unreasonable applied clearly established federal law.

**(G)**     **Ground #7:   Logan was denied his right to due process under the Fifth and Fourteenth Amendments where he was convicted of a crime without sufficient evidence to support the conviction.**

Supporting Facts:

       Logan was convicted on the recanted story of one witness, who told investigators eight versions of the events.   Individual witnesses, present at the scene of the crime, and involved in the investigation afterwards have described a shooter that could not have been Logan.   No rational trier of fact could have found guilt beyond a reasonable doubt based on the record available at trial.

**(H)**     **Ground #8:   Logan was denied the effective assistance of appellate counsel under the Sixth and Fourteenth Amendments when his appellate counsel failed to raise meritorious issues in this case.**

Supporting Facts:

       To the extent that this Court finds that Logan failed to exhaust any of the above claims, then Logan's counsel on direct appeal was ineffective for failing to raise those claims on direct appeal.   In particular, appellate counsel was ineffective for failing to raise on direct appeal the impropriety of introducing polygraph results evidence, the improper closing arguments, and trial counsel's failure to seek a proper limiting instruction.   These errors by appellate counsel prevented Logan from properly appealing errors made during trial.

**(I)**     **Ground #9:   The State violated Logan's Fifth and Fourteenth Amendment rights by failing to disclose a pattern of misconduct by Glenn Evans.**

Supporting Facts:

       At the time of Logan's trial, both Glenn Evans and the Chicago Police Department were aware that Glenn Evans had a pattern of using excessive force during arrests, and a pattern of complaints about his performance as a police officer.   (Exhibit A, FOIA Response from CPD.) This pattern of complaints was never disclosed to Logan's trial counsel despite the fact that it would have been impeaching evidence at Logan's trial, and was relevant to his case in several ways.   The fact that the Chicago Police Department and Evans himself knew of this misconduct is enough to impute that knowledge to the State.   In Logan's case, had this evidence been disclosed

to him, there is at least a reasonable probability that the results of his proceedings would have been different.

This is true for several reasons. First of all, Evans testified at Logan's sentencing hearing about an incident in which he claimed that Logan shot him. He claimed that in November of 1996, he went to seek out a person on an aggravated assault charge, and that Logan began fleeing and then fighting with him, and that he was forced to shoot Logan. As this Court heard during the habeas evidentiary hearing, as a result of this incident, for which charges against Logan were eventually dropped, Logan sued Glenn Evans. However, Evans testified that he was unafraid of the consequences of that civil lawsuit, and Logan's counsel had little other evidence to challenge Evans' version of events.

At that time in Illinois, the potential sentence that Leonard could have received was between 20 and 60 years. 730 ILCS 5/5-8-1 (2000) (later repealed and modified at 730 ILCS 5/5-4.5-20.) He received 45. Therefore, the Court had significantly lower sentences to award to Logan had it had reason to disbelieve the story Evans told on the stand. Evans' testimony was a significant part of the State's case in aggravation and in support of the sentence of 45 years that Logan received. Had Logan's counsel been able to present evidence impeaching Evans' account of what happened during this encounter, Logan would have undercut a significant portion of the evidence in aggravation against him.

More importantly, however, this evidence would have impacted how Logan approached the case and how he presented a defense in this matter, and would have changed the outcome of the guilt phase of the case. The key witness in the prosecution's case was Latonya Payton. An eyewitness to the shooting for which Logan was convicted gave police the license plate number of the vehicle used by the shooter. Police tracked that plate to a rental car company, who in turn directed police to renter Latonya Payton. Payton was then subjected by police to an extended interrogation process punctuated by polygraph examinations, during which she gave police numerous different accounts of what happened. At the conclusion of that extended interrogation, she told police the story she eventually gave in front of the grand jury, that Leonard Logan used her rental car in this shooting. At trial, she recanted her grand jury testimony and testified that she only identified Logan after being coerced by police to name Logan as the shooter.

Based on police reports, then-officer Evans became involved in the investigation after Payton's statement. He contacted detectives about his court dates with Logan on the shooting case, and also spoke to witnesses, including Lassandra Smith, about Logan's relationship with her. His name also appears as an arresting officer when Logan was arrested in this case.

His involvement in these aspects of the case and his history with Leonard Logan were issues that informed trial strategy. Although he did not testify at the guilt phase of trial, the specter of his testimony informed the case. Logan testified that he told his trial attorneys that Officer Evans was a defendant in a civil lawsuit he was pursuing at the time he was arrested in this case, and that he believed Evans framed him in this case because Evans had shot Logan in the past and then accused Logan of disarming him. The evidence presented at the hearing, which is undisputed, is that Evans's name was in the discovery and that Logan discussed Evans with someone, and at the least that proof of those conversations made it into the file that his trial lawyers saw. As Logan explained, his alibi in this case, that he was in Milwaukee, was connected with Officer Evans - his prior counsel told him to avoid Evans, leading Logan to go to Milwaukee.

Finally, Logan's attorneys testified that one reason they did not use an alibi defense was because they were concerned that evidence about what Logan had on him when he was arrested (by Evans) might come in on rebuttal.   (Exhibit B, June 20, 1997 Supplementary Report.).

Evans' history of misconduct creates a motive for he and officers with which he was working in concert to fabricate evidence of Logan's involvement in this shooting.   If Evans had a greater role in Payton's statement that the police reports reflect, or if discovery reveals a connection between Evans and officers who were involved in developing evidence of Logan's involvement, then this misconduct would have been relevant and admissible evidence to discredit the testimony of the officers who testified to deny they coerced Payton.   It would have given those officers a strong motive to identify Logan as the perpetrator.   At his trial, the credibility of the officers who interrogated Payton was very much at issue, since the jury had to decide whether they believed that Payton had been coerced or whether she had recanted her testimony in an effort to help Logan avoid responsibility for a crime that he committed.   For that reason, this evidence about the credibility of the investigating officers and their reasons to lie would very much have influenced the outcome of the case.

Finally, if Logan's trial attorneys had known about this evidence, they would have been able to present a defense from Logan in which he testified to deny his involvement in this shooting. Counsel might have believed that Logan would be discredited if he testified that he was not involved in this shooting because he was in Milwaukee, but Logan could have testified about why he went to Milwaukee, how he knew the date that he was in Milwaukee, and a detailed account of why he was there without fear that Evans would testify credibly to refute that testimony.   If this Court credits the testimony from his trial attorneys at the evidentiary hearing that they failed to present an alibi defense because of certain beliefs they held about the case, those concerns would have diminished if the attorneys had known that one of the arresting officers had a pattern of misconduct and of lying about the circumstances of arrests.   Trial counsel could have presented evidence of an alibi without fear that a credible officer could testify claiming that Logan was arrested with a large amount of cash.   Further, if a Court believes that a valid reason for counsel not presenting an alibi was a fear that it would allow in evidence of a purported domestic violence issue between Logan and Lassandra Smith, then the fact that it was Evans who apparently sought out and spoke with Smith would materially undercut that argument.

In short, this case was litigated with the undercurrent of Evans running through it in multiple ways.   Without knowing that Evans truly was an officer with a demonstrated pattern of misconduct, Logan might have seemed incredible when he complained about Evans to his attorney and when he provided an alibi for himself that had him in Milwaukee.   In turn, the officers in this case might have seemed credible when they testified about the course of Payton's interrogation, and any motive for those officers to lie about facts in the case might have seemed nonexistent or remote.   The evidence about Evans offers the defense impeachment evidence, a credible theory of what happened, and a strong path to presenting an alibi defense.   Had it been available to Logan, there is at least a reasonable likelihood that the outcome at trial would have been different.   For this reason, the failure to provide this material evidence to the defense for use at trial violated Logan's Fifth and Fourteenth Amendment rights.

**(J)**    **Ground #10:   As an alternative to Claim #9, Logan was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments when his counsel failed to uncover evidence prior to trial that Glenn Evans had a pattern of misconduct.**

Supporting Facts:

To the extent that Logan could have used evidence of the pattern of misconduct in the ways described above with respect to Ground #9, and to the extent that his trial counsel could have uncovered evidence of this pattern of misconduct through the exercise of due diligence, then counsel was ineffective for failing to locate evidence that would led to a different outcome at trial. To be clear, Logan believes on the basis of the evidence he possesses that this evidence was unavailable to counsel, and that counsel had no reason to seek out what the State had an obligation to provide on its own.   However, if a court concludes otherwise, then counsel was ineffective for failing to uncover and use this evidence at trial.   Had counsel found and used this evidence, it would have changed the outcome at trial.

Second, this evidence is relevant to Logan's ineffective assistance of counsel claim described above (Ground #2) for promising and failing to deliver an alibi defense, and should be considered along with all the evidence this Court heard at the evidentiary hearing in this matter. At the evidentiary hearing that this Court conducted, it heard evidence related to Logan's claim that his attorney was ineffective for promising and failing to deliver an alibi defense.   During that hearing, Logan's trial counsel told this Court that at one point prior to trial, he confronted Logan about whether or not Logan had an actual alibi, and Logan would not give him an answer about that issue during the confrontation. (Dckt. No. 60 at 266-67.)  The implication from this testimony was that Logan had given counsel some credible reason to doubt his alibi.  Kelly also denied that Logan had ever told him that he believed he was being framed by Evans in retaliation for the civil case. (Dckt. No. 64 at 188-93.)  In contrast, Logan testified that his personal belief in the case was that because Officer Evans was a defendant in a civil lawsuit he was pursuing at the time he was arrested in this case and because Evans had shot Logan in the past and then accused Logan of disarming him, Evans was framing him in this case.   Logan said that from the beginning he told Kelly of this issue; he believed it was critical to the case.   (Dckt. No. 60 at 415, 433-34.)

This Court should consider evidence about Evans' pattern of misconduct in assessing Kelly's and Logan's credibility for purposes of the hearing that it just heard.   It makes it more likely that Logan is telling the truth about Evans having framed him if it is true that Evans has a pattern of excessive force and other misconduct from this time period, and indeed throughout his career.   Whether the underlying facts of that misconduct are true is less relevant than the fact that Evans had this number of complaints, particularly sustained complaints; it gave him a greater motive than other officers to avoid having future sustained complaints when he was potentially an officer on the brink of being in serious trouble because of his history of misconduct.   It therefore makes it more likely that Logan is telling the truth when he says he told his attorney that Evans had a motive to frame him if Evans did have a motive to frame him.   This is evidence that this Court should consider in its analysis of Logan's pending claims.

**(K) Ground #11: Because Logan can present evidence that no reasonable juror would have convicted him, this Court should allow him to present procedurally-defaulted claims.**

Supporting Facts:

Leonard Logan recently obtained an affidavit from a newly-discovered witness averring that he saw a shooting that matches the description of the shooting for which Logan was convicted, and that the shooter was not Logan. (Exhibit C, Affidavit of Erven Walls.) He identifies the shooter in the affidavit. This affidavit, particularly with corroboration, is evidence supporting Logan's actual innocence. The existence of a meritorious actual innocence claim in this case triggers the fundamental miscarriage of justice exception that excuses a petitioner's failure to overcome procedural hurdles to habeas relief. This affidavit and all of the other evidence in this case shows that it is more likely than not that no reasonable juror would have convicted Logan.

Thus, any claims that Logan potentially has procedurally defaulted are claims that this Court can nevertheless consider.

**(L) Ground #12: The above errors, cumulatively, so infected Logan's trial that they violated his right to due process under the Fifth and Fourteenth Amendments.**

Supporting Facts:

Even if this Court concludes that certain of the claims above did violate Logan's rights, but that those violations were not sufficiently prejudicial to warrant a new trial, the errors described above so infected his trial as to deny him the right to due process under the Fifth and Fourteenth Amendments.

2.      Have all grounds raised in this petition been presented to the highest court having jurisdiction?

        YES   ( )     NO   ( X )

3.      If you answer **"NO"** to question (2), state briefly what grounds were not so presented and why not:

Grounds number 5 and 12, which are cumulative error claims, were not explicitly raised in the courts below. In addition, Grounds # 9, 10 and 11 have not been raised in the Illinois State Courts, but that failure can be attributed to those claims only recently being discovered by Logan. Those claims are the subject of a pending Motion to Stay filed before this Court (Dckt. No. 73.) Other than those claims, each component of those cumulative error claims were raised to the Illinois Supreme Court.

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

14

(A)     At preliminary hearing:
        unknown

(B)     At arraignment and plea:
        unknown

(C)     At trial:

Martin Kelly
Anthony Thomas
Office of the Cook County Public Defender
2650 S. California Ave.
Chicago, IL   60608

(D)     At post-trial motions and sentencing:

Scott Frankel
Frankel & Cohen
53 West Jackson Boulevard Suite 1615
Chicago, IL 60604-3606

(E)     On appeal (direct appeal and PLA)

Timothy Lemming
Office of the Cook County Public Defender
69 W Washington Street
Street 1500
Chicago, IL 60602-3021

(F)     In any post-conviction proceeding:

Initial post-conviction counsel:
Douglas H. Johnson
Kathleen T. Zellner& Associates
1901 Butterfield Road, Suite 650
Downers Grove, IL 60515

Later post-conviction counsel:
Tara Thompson
The Exoneration Project
at the University of Chicago Law School
6020 S. University Ave.
Chicago, IL   60637

(G)     Other (state): N/A

**PART V – FUTURE SENTENCE**
Do you have any future sentence to serve following the sentence imposed by this conviction?
YES    (   )   NO (X)

Name and location of court which imposed the sentence: N/A

Date and length of sentence to be served in the future:    N/A

      WHEREFORE, petitioner asks that the Court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____12/23/14_____    ___/s/ Tara Thompson_____
              (Date)    Signature of attorney (if any)


              **I declare under penalty of perjury that the foregoing is true and correct**

              _____
              (Signature of Petitioner)


              ___R-11048_____
              (I.D. Number)


              ___Dixon Correctional Center_____
              (Address)


Tara Thompson
THE EXONERATION PROJECT
   at the University of Chicago Law School
6020 S. University Ave.
Chicago, IL   60637
(312) 789-4955(tel)
(312) 588-7276 (fax)