## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| LEONARD LOGAN, | ) | |
| | ) | Case No. 12 CV 6170 |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEDRA CHANDLER, | ) | |
| | ) | Judge Kennelly |
| Respondent. | ) | |

### PETITIONER'S REPLY IN SUPPORT OF HIS MOTION
### TO LIFT THE COURT'S STAY

NOW COMES Petitioner Leonard Logan, by and through his counsel The Exoneration Project, and pursuant to this Court's Order of October 3, 2017 (Dckt. No. 101) hereby replies in support of his motion to lift the Court's stay of this matter (Dckt. No. 94) as follows:

On July 31, 2017, following over two years of delay in the state court post-conviction proceedings that led this Court to stay Mr. Logan's amended petition for a writ of habeas corpus, Mr. Logan sought from this Court an order lifting the stay of this matter to allow Mr. Logan to litigate both his exhausted and unexhausted claims before this Court due to inordinate delay in the state court proceedings as contemplated by 28 U.S.C. § 2254(b)(1)(B)(ii). Over two months have now passed since Mr. Logan filed that original motion, and the landscape of his post-conviction proceedings, as the parties described to the Court in their joint status report, has been slightly altered. (Dckt. No. 99.)

Respondent's further response primarily presses the Court to accept the argument made in Respondent's initial response, but makes two specific points: (1) some of the continuances in the state court proceedings were "by agreement," which in Respondent's view prevents an inordinate delay finding; and (2) because the state court has ordered the state to respond to Mr. Logan's state post-conviction petition, there is no longer any need for the federal court to intervene. Mr. Logan acknowledged the first point in his original motion to lift this stay, and as argued therein, the authority cited by Respondent in his further response does not prevent this Court from finding inordinate delay. As to the state court proceedings now moving, albeit with months of further delay, the future and timing of the state court proceedings remain uncertain enough and delayed enough that this Court still has the jurisdiction to lift the stay and allow Mr. Logan to proceed. In the alternative, this Court should do as it indicated it was contemplating doing back in March of 2016, and rule on Mr. Logan's exhausted claims so that Mr. Logan can still receive meaningful and timely relief from this Court.

**I.     The "By Agreement" Designation of Some Continuances in Mr. Logan's State Court Litigation Does Not Bar This Court From Finding Inordinate Delay in the State Court Proceedings**

Respondent's first point is that because there were multiple continuances in the state court proceedings that were "by agreement" as reflected in state court records, Petitioner should not be allowed to argue that there is inordinate delay in the state court proceedings. This is not a new assertion by Respondent, and in fact Petitioner provided the disposition sheet attached to Respondent's Further Response to Respondent on August 1, 2017, prior to Respondent's initial response (Dckt. No. 96), which was filed on August 2, 2017.

Respondent's reliance on *Lane v. Richards*, 957 F.2d 363, 365 (7th Cir. 1992) and *United States v. Kucik*, 909 F.2d 206, 210-11 (7th Cir. 1990) for the proposition that because Petitioner

agreed to continuances below he is prevented from arguing inordinate delay is incorrect. In *Lane,* it was the petitioner's own counsel who sought continuance after continuance, presumably so petitioner's own counsel could prepare to litigate the case. *Id.* at 363-65. *Kucik* analyzes the right to a speedy trial and concludes that where a defendant agrees to a continuance to allow the government to review its petition, that time tolls the speedy trial clock. *Id.* at 211.

Mr. Logan's case is akin to neither factual scenario. As Mr. Logan explained in his opening brief, it is true that some courts in the Northern District of Illinois have rejected an inordinate delay argument where there are continuances that were asked for or agreed to by a petitioner's counsel below. *See, e.g., U.S. ex rel. Ferguson v. Chandler*, 2012 WL 1866360, at *8 (N.D. Ill. May 21, 2012) (recognizing inordinate delay is not a stand-alone constitutional claim for a habeas petitioner, but noting nonetheless that continuances in the state court proceedings were "either asked for or agreed to by Petitioner's counsel"); *U.S. ex. Rel. Bolden v. Walls*, 2010 WL 1752549, at *3 (N.D. Ill. April 30, 2010) (equating state court counsel's non-opposition to continuances with an "error" of counsel). The record in Petitioner's case reflects that Petitioner's counsel did not ask for these continuances – they were at the behest of the state with the exception, as Petitioner noted in his own motion, for the delay between April 10, 2017 to May 5, 2017 where neither party appeared in court. (Dckt. No. 94 at 5-7.) *Ferguson* cites no authority for the district court's aside on this point, and *Bolden* cites to *Lane* which, as described above, does not stand for the proposition that a continuance that is granted without objection necessarily prevents a petitioner from arguing inordinate delay.

On the facts of this case, Petitioner never sought the state court to delay ruling on his post-conviction claims. The parties to this litigation have filed with this Court multiple status reports over the months that this case has been pending, and they support Petitioner's recitation

3

of the facts. (Dckt. Nos. 80, 82, 84, 86, 88, 91, 99.) These reports reflect that Petitioner filed his post-conviction petition in February of 2015, the state court took four months to decide whether Mr. Logan should even be granted leave to file that petition, ultimately granting leave on June 9, 2015 (Dckt. No. 84), and then the Conviction Integrity Unit began reviewing this case and sought extensions of time (which Petitioner did not object to) to complete its investigation, which dragged on through the entirely of 2015 until at least April of 2016. (Dckt. Nos. 86, 88.) Around that time the parties conferred about post-conviction DNA testing which took months to complete, and when the parties entered an order for DNA testing, the state court determined it would halt post-conviction proceedings while the DNA testing moved forward. (Dckt. No. 91 at 2.) There is no law that prevents this Court from making a finding of inordinate delay on the basis of this record, and the Respondent has cited none to the Court.

## II. The State Court's Order that the State Respond to Mr. Logan's Post-Conviction Petition Does Not Excuse the Inordinate Delay in the State Court Proceedings

As the parties advised this Court, on September 5, 2017, the state court finally ordered the state to answer or otherwise respond to Mr. Logan's post-conviction petition, but gave the state until December 20, 2017 to do so. (Dckt. No. 99 at 1-2.) The Illinois post-conviction statute contemplates the state having 30 days to decide whether it will move to dismiss, although it allows the court the authority to grant extensions. 725 ILCS 5/122-5. In this case, even assuming the state in fact responds in December, it will have had two and a half years total, and over 100 days to respond between October and December of 2017.

Respondent contends that because the state has now been ordered to respond to the post-conviction petition, there is no longer "delay" that justifies a finding of inordinate delay. This is incorrect. The case the Respondent cites for this proposition, *Monegain v. Carlton*, 576 Fed. Appx 598 (7th Cir. 2014) is one in which after a long delay in the state trial court, shortly before

4

the petitioner had oral argument in front of the Seventh Circuit to argue there had been inordinate delay, the state court denied petitioner post-conviction relief. *Id.* at *601 (explaining that petitioner's post-conviction petition had been fully briefed by both the petitioner and respondent and sat undecided for over two years until shortly before argument). In that case, the Seventh Circuit concluded that the state court had ruled on the petitioner's claims and so "the state trial court delay has ended and the State provides a viable option for relief by appeal." *Id.*

Mr. Logan and the petitioner in *Monegain* are not in the same posture. Although, as Respondent indicates, the state has been given a deadline, this does not indicate that the delay has ended. *Monegain* cites to several decisions from other circuits for the proposition that a past delay does not allow for a finding of inordinate delay, but in *Monegain* and the main case on which it relies, the past delay had been ended by a resolution at that level of state court litigation. *Id.* at 601; *Vreeland v. Davis*, 543 Fed. Appx. 739, 741-42 (10th Cir. 2013) (a delay at the appellate court was ended by an appellate decision). The other case cited by *Monegain*, *Slater v. Chapman*, 147 Fed. Appx. 959 (11th Cir. 2005), is one in which a 16-month direct appeal delay concluded with the appointment of counsel. *Id.* at 959. Even in *Slater*, however, the court cautioned that "a state of exhaustion can be reached by the lapse of time and at some point in time exhaustion need not be further exhausted." *Id.* at 960 (quoting *Dixon v. Florida*, 388 F.2d 424, 425 (5th Cir. 1968)).

Respectfully, although Mr. Logan now finds himself in the middle of a 100-day waiting period for the state to respond, his exhaustion need not be further exhausted. Mr. Logan's state court post-conviction proceedings will have taken two and a half years to even get to a point where he is able to respond to the state's position on his post-conviction petition, assuming that even occurs in December. The litigation will be far from over at that point – he will still need to

5

respond to a motion to dismiss or conduct an evidentiary hearing and, if unsuccessful, pursue additional level of appeals in the state courts. In the absence of the conclusion of the state trial court proceedings, there remains inordinate delay in Mr. Logan's case.

### III. This Court Should Lift The Stay or, At Minimum, Rule on Mr. Logan's Exhausted Claims

Mr. Logan acknowledges that he sought a stay of these proceedings and chose to file a successive post-conviction petition in state court – he wanted to allow this Court to be able to consider of all his claims. He respectfully submits that he has made a showing of inordinate delay that would allow this Court to now consider all those claims. In the event that this Court concludes otherwise, this Court should at least rule on Mr. Logan's exhausted claims as the Court indicated it was considering back in 2016, and as Mr. Logan then argued the Court should do (albeit through a non-final disposition). (Dckt. No. 88.)

At the time Mr. Logan sought the stay, he found himself in a difficult position of having claims that had been fully considered at an evidentiary hearing and were ripe for ruling, but also wanting to ensure he could fully vindicate his constitutional rights by raising other important constitutional claims about which he had just been made aware. Two and a half years into that process, his situation has not changed – this Court still has before it ripe claims as well as claims that have not yet been fully briefed or addressed before this Court. If this Court were to rule on Mr. Logan's exhausted claims, it would allow Mr. Logan to decide how best, if at all, to litigate his additional claims going forward, and would provide some measure of relief while protecting against the risks identified by the Court back in 2016 as the evidentiary hearing and the briefing that accompanied it becomes a distant memory. It was Mr. Logan's choice to litigate his petition in the way he has, although the delay in state court was not of his choosing. Nevertheless, as he has argued to this Court all along, the habeas process should not require a Hobson's choice of

6

petitioners – the right to stay a petition if necessary to exhaust additional claims, but the consequence of year after year of delay as long as a state court inches forward every so often. The Court has the authority to advance these proceedings, and it would be in the interests of justice to do so.

WHEREFORE, for the reasons stated above and in Mr. Logan's original motion (Dckt. No. 94), Mr. Logan respectfully requests that this Court lift the stay of Mr. Logan's habeas petition and allow him to pursue relief for both his exhausted and unexhausted claims.

Respectfully Submitted,

/s/ Tara Thompson

Jon Loevy
Tara Thompson
David B. Owens
THE EXONERATION PROJECT
 at the University of Chicago Law School
6020 S. University Avenue
Chicago, IL 60637
(312) 789-4955
Counsel for Petitioner

DATE: October 11, 2017

## CERTIFICATE OF SERVICE

      I, Tara Thompson, an attorney, certify that on October 11, 2017 I sent by electronic means a copy of the attached Petitioner's Reply in Support of His Motion to Lift the Court's Stay to counsel of record through this Court's CM/ECF System.

/s/ Tara Thompson