**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| United States of America ex rel. ) | |
| LEONARD LOGAN, ) | |
| ) | Case No. 12 CV 6170 |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| NEDRA CHANDLER, Warden, ) | |
| ) | Judge Kennelly |
| Respondent. ) | |

**PETITIONER LEONARD LOGAN'S
RENEWED MOTION FOR THE COURT TO LIFT THE STAY
AND ALLOW PETITIONER TO LITIGATE HIS UNEXHAUSTED CLAIMS**

NOW COMES Petitioner Leonard Logan, by and through his counsel The Exoneration Project, and files this renewed motion requesting that this Court lift the stay of this matter and allow Petitioner to litigate his unexhausted claims before this Court due to inordinate delay in the state court proceedings under 28 U.S.C. § 2254(b)(1)(B)(ii). Mr. Logan originally sought to stay these proceedings because he wanted to ensure that this Court would also have the opportunity to consider the important issues about a pattern of police misconduct that Mr. Logan first uncovered while this Court was considering his exhausted habeas claims. The state court proceedings addressing his unexhausted claims have proceeded more than two years beyond the last time, in 2017, Mr. Logan sought this relief from this Court. (Dckt. No. 94.) There still remains no end in sight, as the Circuit Court of Cook County continues to consider, as it has since July 15, 2019, Mr. Logan's motion to supplement his post-conviction petition with newly-discovered evidence. That evidence is police dispatch radio communications Logan has

requested in discovery multiple times during his post-conviction and federal habeas pleadings, which were only located by the State during his evidentiary hearing in state court in 2019. Mr. Logan has waited so long for collateral relief that he has been released from prison and is on mandatory supervised release that could terminate in 2022. Mr. Logan is not responsible for the delay in locating these records or the delay in moving his post-conviction proceeding through the state court. This Court should intervene to ensure a meaningful review of Mr. Logan's claims while he remains in State custody.

Petitioner briefed these issues back in 2017 when he originally sought this relief and in those pleadings (Dckt. Nos. 94 and 102), but presents additional argument in support of this renewed motion as follows:

**Factual Background**

1. The present habeas petition has been pending before this Court since August 6, 2012. (Dckt. No. 1.) After considering the briefing of the parties, on November 21, 2013, this Court entered an order denying Petitioner's petition in part, but granting Petitioner an evidentiary hearing on his ineffective assistance of trial counsel claims concerning an alibi defense. (Dckt. No. 41.) The Court held an evidentiary hearing in February of 2014, and thereafter allowed the parties time to submit post-hearing briefing. (Dckt. Nos. 54-59, 63, 65-66.)

2. To prepare for that hearing the Court allowed Mr. Logan to seek discovery, and he attempted without success to obtain the police dispatch radio communications he believed supported his ineffective assistance of counsel claims before this Court. Counsel for Respondent attempted to assist Petitioner in locating those documents in the Court file, and the Court heard tapes located in that file *in camera*, but none were the sought-after dispatch tapes.

3.     In October of 2014, while this matter remained on this Court's docket pending a ruling following the hearing, Mr. Logan filed a motion to stay these proceedings so that his counsel could investigate potential new issues in Mr. Logan's case. (Dckt. No. 67.) At that time, Petitioner's counsel advised the Court that she had become aware that Glenn Evans, a Chicago Police Officer who had been centrally involved in the investigation of Mr. Logan and in his arrest and prosecution in this case, had been arrested and charged with aggravated battery and official misconduct. (*Id.* at 2.) Counsel advised the Court that she had also become aware of a series of complaints against Glenn Evans that could raise additional constitutional claims for Mr. Logan to pursue. (*Id.* at 2-3.) This Court allowed Petitioner time to investigate these issues, and in December of 2014, Petitioner filed a motion to amend his habeas petition and to stay and abey these proceedings so that Mr. Logan could pursue and potentially exhaust in state court additional issues, including that his counsel was ineffective for failing to investigate and raise issues about Glenn Evans' pattern of misconduct, that the State withheld exculpatory evidence from him about Glenn Evans' pattern of misconduct. (Dckt. No. 73 at 4, 9.) This motion also raised the argument that he should be allowed to pursue any procedurally-defaulted claims because he had recently obtained an affidavit from an eyewitness that saw this shooting who has averred that the shooter was not Leonard Logan, and who has identified the true shooter in his affidavit. (*Id.* at 10-11 and Ex. C, Affidavit of Erven Walls.)

4.     On January 21, 2015, this Court granted Mr. Logan's motion to amend his habeas petition and to stay and abey these proceedings pending his filing of a motion for leave to file a successive post-conviction petition in state court. (Dckt. No. 78.)

5.     Mr. Logan filed a motion for leave to file a successive post-conviction petition before the Circuit Court of Cook County on February 25, 2015. (Dckt. No. 80 at 1.) In June of

3

2015, the state court granted Mr. Logan leave to pursue his successive post-conviction petition, thus docketing the petition and beginning its litigation in state court. (Dckt. No. 84 at 1.)

6. There was delay in litigating those post-conviction proceedings because the Conviction Integrity Unit of the State's Attorney's Office investigated Mr. Logan's claims and conducted some forensic testing. Their review, which took over two years, did not result in any change in the State's Attorney's Office's position about Mr. Logan's case.

7. The State ultimately filed an answer and partial motion to dismiss Mr. Logan's state court post-conviction petition in April of 2018, or nearly 3 years after the state court docketed Mr. Logan's petition. (Dckt. 110 at 1-2.) The state court ultimately granted Mr. Logan an evidentiary hearing on his actual innocence claims, but dismissed all of his other claims, including his claims related to Glenn Evans.

8. On April 10, 2019, when the state court had scheduled a second and final day of testimony for Mr. Logan's evidentiary hearing, the State informed counsel for Mr. Logan that it had located in its possession a copy of the police dispatch radio communications Mr. Logan has been seeking for years. (Dckt. No. 121 at 1.) Mr. Logan obtained a copy after that court date, and investigated their contents. (Dckt. No. 125 at 1.) On July 15, 2019, he filed a motion for leave to supplement his petition with evidence from those tapes. (Dckt. No. 127 at 1.) Those tapes included a recording from police at the scene providing a "flash message" description of the shooter from the scene that described the shooter as a "male black, 5'7", 130 pounds, dark skinned." This description does not match Mr. Logan's at that time – he was taller and 70 pounds heavier than this description. This description does match what Charles Jenkins testified the perpetrator looked like, and what Elbert Garrett described to police in police reports. It also matches the description of Kenneth Mosby, who newly-discovered witness Erven Walls has

4

testified was the real perpetrator of this shooting. This description corroborates Latonya Payton's recantation and supports Mr. Logan's innocence, and is powerful evidence his counsel failed to make use of in presenting his defense.

9. The State responded to that motion on October 8, 2019 asking the state court to deny the motion to supplement. Mr. Logan replied on November 13, 2019 and the state court set oral argument, on its own initiative, to January 6, 2020. The state court is set to rule on the motion to supplement on February 20, 2020 – again, the state court indicated it sought that amount of time to issue its ruling.

10. Once the state court has ruled, Mr. Logan will need to complete the evidentiary hearing before the court, which will involve the presentation of 2 additional witnesses, as well as any witnesses the State seeks to call. The state court will then hear argument and rule on the petition. The State has the right to appeal even a grant of post-conviction relief to Mr. Logan, so there may be an appeal even if Mr. Logan prevails. In short, these state court proceedings continue with no end in sight.

**Argument**

11. This Court can grant relief on an unexhausted claim if "circumstances exist that render [a state corrective process] ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii). Undue delay by a state court hearing an unexhausted claim can render a state corrective process ineffective within the meaning of § 2254(b). *Jenkins v. Gramley*, 8 F.3d 505, 508 (7th Cir. 1993) ("Undue delay by a state court might show that available state remedies have been exhausted, permitting the federal court to proceed even while the state appeal was pending.") (citing *Hankins v. Fulcomer*, 941 F.2d 246 (3d Cir. 1991); *Harris v. Champion*, 938 F.2d 1062 (10th Cir. 1991) ("*Harris I*")). An inordinate delay can be as short as seventeen

months. *See Sceifers v. Trigg*, 46 F.3d 701, 703 (7th Cir. 1995); *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970) (remanding a case for a hearing on whether a seventeen-month delay was justifiable). If a delay is inordinate, the court should consider whether the delay is attributable to the state and whether the delay is justifiable. *See Lane v. Richards*, 957 F.2d 363, 365 (7th Cir. 1992).

12. Courts in this district have previously recognized a rebuttable presumption of inordinate delay at the two-year mark. *See U.S. ex rel. Green v. Washington*, 917 F. Supp. 1238, 1277 (N.D. Ill. 1996) (citing *Harris v. Champion*, 47 F.3d 1127, 1132 (10th Cir. 1995) ("*Harris II*"). By any measure, since Mr. Logan's post-conviction petition was docketed at the state court level in June of 2015, he is at this two-year mark (and now has more than doubled it) where this Court should consider whether the inordinate delay doctrine allows this Court to assess his unexhausted claims.

13. Clearly there has been some movement in Mr. Logan's case, particularly since April of 2018 when the State finally responded after a four-year delay since the filing of Mr. Logan's supplemental petition. And Mr. Logan recognizes that his counsel has not objected to the setting of every new date before the state court in that time period. But, Mr. Logan has not sought these delays, in particular did not seek the delay caused by the State's late discovery of the police dispatch tapes, and has sought to move his petition forward only to have that processed slowed to a crawl in state court.

14. This Court may conclude that there is no inordinate delay because there has been some movement in Mr. Logan's proceedings over the five years, and in particular the last 2 years, but Mr. Logan respectfully submits that the delays in the state court proceedings have not been caused by petitioner's counsel's errors or dilatory behavior. *Cf. Lane v. Richards*, 957 F.2d

6

at 365 (rejecting inordinate delay finding where delays were caused by petitioner's state court counsel request for continuances). Instead, they have been caused by the slow progress of the state court proceedings and the trial court's management of its schedule. Mr. Logan respects the state court and the process, but it is his desire to have his claims heard by a court when it will still have the ability to provide him some relief from his sentence.

15. The purpose of the inordinate delay language in Section 2254 is to allow a petitioner to take advantage of a federal court remedy for unexhausted claims where the state court proceedings, due to delay, in effect deny a petitioner a meaningful opportunity to pursue his constitutional claims through a state court corrective process. 28 U.S.C. § 2254(b)(1)(B)(ii). This is the position that Mr. Logan now finds himself. He has now been released on mandatory supervised release and has two more years to serve.

16. Mr. Logan's state court proceedings reflect an unlikelihood that they will lead to Mr. Logan again comes before this Court seeking an opportunity to move these proceedings forward.

17. As Mr. Logan argued to this Court when he last sought this relief, Mr. Logan understands he chose to seek a stay in these proceedings, but that was because he wanted to make sure that a court heard and took seriously his constitutional claims, which have now been waylaid indefinitely by the state court. A habeas petitioner should not face the Hobson's choice of electing to forgo any right to state process where that state process takes years and years to resolve. This Court has the authority to advance these proceedings, and it would be in the interests of justice to do so.

**Conclusion**

18.    Because the state court proceedings have demonstrated that they are unlikely to lead to exhaustion at any point in the coming years. He again seeks the assistance of this Court to have meaningful process over his unexhausted claims.

                         Respectfully Submitted,

                         /s/ Tara Thompson

                         Jon Loevy
                         Tara Thompson
                         THE EXONERATION PROJECT
                           at the University of Chicago Law School
                         6020 S. University Avenue
                         Chicago, IL 60637
                         (312) 789-4955
                         Counsel for Petitioner

## **CERTIFICATE OF SERVICE**

      I, Tara Thompson, an attorney, certify that on January 22, 2020, I sent by electronic means a copy of the attached Renewed Motion to Life the Stay, to counsel of record through this Court's CM/ECF System.

                                                                             /s/Tara Thompson